**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

ERICA HERNANDEZ,                                    Case No.: 1:19-cv-1727

                Plaintiff,

   -against-


PREMIUM MERCHANT FUNDING ONE, LLC,                  **COMPLAINT**
JAMES P. GEISELMAN III,
and DANIEL P. MOORE,
                             Plaintiff Demands a
              Defendants.       Trial by Jury

----------------------------------------------------------X

      Plaintiff ERICA HERNANDEZ ("PLAINTIFF" or "HERNANDEZ"), by her

attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants PREMIUM

MERCHANT FUNDING ONE, LLC, JAMES P. GEISLMAN III, and DANIEL P. MOORE,

upon information and belief as follows:

## JURISDICTION & VENUE

1.   Jurisdiction of this action is conferred upon this Court as this case involves a Federal

     Question under 29 U.S.C. §206(d)(1).

2.   Additionally, this Court has supplemental jurisdiction of the State law causes of action

     asserted in this action under 28 U.S.C. § 1367.

3.   Venue is proper in the Southern District of New York under 28 U.S.C. 1391 (b)-(c)

     because a substantial part of the events or omissions giving rise to Plaintiff's claims

     occurred within the Southern District of New York.

4.   Plaintiff has filed with the Equal Employment Opportunity Commission and is awaiting her

     administrative right-to-sue letter.

## PARTIES

5.  At all times material, Plaintiff was and is an individual female who is a citizen of the State of New York.

6.  At all times material, Defendant PREMIUM MERCHANT FUNDING ONE, LLC ("PMF") was and is a domestic limited liability company, duly existing by the virtue and laws of the State of New York.

7.  At all times material, Defendant JAMES P. GEISELMAN III ("GEISLMAN") was and is an individual male who is believed to be a citizen of the State of New York.

8.  At all times material, Defendant DANIEL P. MOORE ("MOORE") was and is an individual male who is believed to be a citizen of the State of New York.

9.  At all times material, Defendant MOORE was and in Plaintiff's immediate supervisor, holding the power to hire and fire Plaintiff and control Plaintiff's daily work activities.

## STATEMENT OF FACTS

10. On or about January 29, 2018, Defendants hired Plaintiff as an Independent Sales Representative ("Representative").

11. As a Representative, Plaintiff's main job responsibility was to help facilitate Defendants purchase of future earnings from merchants across the nation. Representatives were to "market and promote" and "assistant interested parties in completing and submitting to PMF an application," and to "promote" and "maximize the number of merchants applying to" PMF.

12. On or about March 26, 2018, Plaintiff entered into an employment contract with Defendant PMF.

13. At all times material, Plaintiff was a commission-based employee and did not receive a salary.

14. At all times material, Plaintiff was entitled to thirty (30) percent of all "commissions" earned. As stated in Plaintiff's employment contract: "*Rep's compensation under the terms of this Agreement shall be a commission computed as 30% of actual commission payments received by PMF and 25% of any additional fees or professional service fees (PSF) actually paid to PMF.*"

15. Additionally, if a Representative surpassed $500,000 and a minimum of 6 deals, that Representative would be entitled to thirty-two (32) percent of all deals.

16. At all times material, Defendants ostensibly hired Plaintiff as an independent contractor.

17. On or about March 6, 2018, Plaintiff was closing her first "deal," in which, according to her contract, she was entitled to 30% of. While closing the deal, Defendant GEISLMAN helped Plaintiff by answering a question for the merchant over the phone.

18. That same day, after the close of the deal, Defendant GEISLMAN demanded Plaintiff come speak to him. In an office, GEISLMAN stated to Plaintiff "How would you feel if I were to take you to the hotel behind PMF and I eat your pussy or we go have sex?" Plaintiff responded flatly, "No." GEISLMAN then asked Plaintiff, "Not even if I paid you?" Plaintiff denied GEISLMAN's advances. GEISLMAN continued, asking Plaintiff "Or eat your ass?" Plaintiff left GEISLMAN's office hurt and disgusted.

19. Three weeks later when commission payment became due to Plaintiff for her first deal, Defendant MOORE told Plaintiff that Defendant GEISLMAN would be splitting the commission with her. Plaintiff was shocked.  MOORE told Plaintiff "You probably didn't hear us, but before [GEISLMAN] grabbed the phone we agreed you guys would go

'*splitskies*.'" Plaintiff protested the unfair split, as the "*splitskies*" was never described in her employment agreement or agreed upon at any time.

20. Weeks later, Defendant MOORE demanded Plaintiff split her commission on a second finalized deal. Plaintiff again protested and let her supervisors know that splitting her commissions was never agreed upon – by contract or otherwise.

21. On or about April 6, 2018, Defendants' Supervisor MOORE instructed Plaintiff to keep GEISLMAN on all of her files as an underwriter, thereby reducing Plaintiff's commissions. Plaintiff was confused – nowhere in her employment agreement did it call for this kind of relationship. Additionally, no male colleagues in the firm had an assigned underwriter, and, as an independent contractor Plaintiff was confused why she needed an underwriter at all.

22. In or around May of 2018, Defendants' Manager DENNIS CARTER ("CARTER") approached Defendant MOORE and his entire team on the sales floor. CARTER stated, "[Plaintiff] needs to be moved or required to wear different attire – she's distracting my team when she bends over!" CARTER's team laughed. MOORE instructed CARTER to go back to his seat but otherwise took no reasonable or immediate action to help combat or rectify CARTER's sexist comment. Plaintiff was mortified.

23. In or around June of 2018, Plaintiff held a one-on-one meeting with Defendants' Chief Operations Officer ABE BURGER ("BURGER") to address her reduced commissions. BURGER told Plaintiff that PMF paid her "according to the work" she did. Plaintiff explained that she was closing deals and not being paid the commissions she was promised. Plaintiff expressed that this was unfair and her commissions were being paid on her manager's whim, not by any expressed agreement. In response, BURGER simply told Plaintiff "you can refer to the company contract which is in the company drive." When

Plaintiff explained that the contract does not detail any mandated splits on commissions or personal service fees between Representatives or team leaders, BURGER has no response.

24. Throughout her employment, Defendant MOORE would, among other acts: (i) instruct Plaintiff when to show up to work; (ii) instruct Plaintiff when to leave work; (iii) instruct Plaintiff how to do her job; (iv) instruct Plaintiff who she could work with at PMF; (v) control Plaintiff's daily work activities.

25. In or around June of 2018, Plaintiff held a one-on-one meeting with Defendants' Chief Executive Officer SAM LALOUZ ("LALOUZ") to discuss her concerns on unpaid commissions and a hostile work environment.

26. Plaintiff asked LALOUZ to switch her off of Defendant MOORE's team. Plaintiff explained to LALOUZ that, among other things, her commissions were not be being paid out properly, MOORE continued to change her commission structure, MOORE continued to provide leads and then take them away when he got mad at her, MOORE bullied her on a daily basis, disparage her character, and controlled her daily work activities, including her hours.

27. LALOUZ assured Plaintiff the company was "fair," and told her she had no choice but to work with Defendant MOORE. LALOUZ further instructed Plaintiff to consult with Defendants' COO BURGER on commission issues.

28. Defendants' pattern and practice of reducing Plaintiff's earned commission arbitrarily continued up and until Plaintiff's constructive termination.

29. At all times material, no other similarly situated male Representative had their earned commissions slashed.

30. Plaintiff reported the on-going disparate treatment to Defendants' Office Manager MASON KASHAT ("KASHAT"). KASHAT simply told Plaintiff "[GEISLMAN] will get a cut [of your commissions] whether he helps you or not."

31. Eventually, Defendants demanded that Plaintiff split her commission with MOORE and GEISLMAN three ways. Meaning, Plaintiff would be entitled to only 1/3 of what her contract originally called for.

32. In or around July of 2018, Plaintiff again complained about the unfair wage practice to Defendants' COO BURGER. BURGER stated to Plaintiff that before a split on commissions occurred, it would be agreed to in an e-mail.

33. Thereafter, Plaintiff and Defendants never agreed to a commission split via e-mail yet Defendants continued to withhold Plaintiff's earned commissions.

34. At all times material, Defendant PMF continued to harbor a toxic environment filled with excessive drinking and sexist behavior.

35. In or around September of 2018, Defendant GEISLMAN demanded all summer interns participate in a liquor-chugging contest. At the drinking contest, a young intern got so intoxicated that he started to throw up, foam at the mouth, and became unconscious on Defendants' floor. Defendants' employees laughed and took videos.

36. Plaintiff protested the excessive drinking and demanded the intern – who was under 21 – be taken to a hospital. Thereafter, Defendants took the intern to the hospital and called maintenance to clean up his vomit.

37. In or around October of 2018, Defendants' Supervisor MOORE approached Plaintiff from behind while Plaintiff was at her desk. MOORE put his arm around Plaintiff's shoulders and grabbed her breast. MOORE then laughed and said "I didn't mean to cup your boob."

MOORE did not move his hand. MOORE then stated "I am known to do the reach around!" MOORE continued to laugh and grab Plaintiff's breast. Plaintiff removed MOORE's hand from her breast and attempted to continue to work. Defendants' Representative Angel [Last Name Unknown] witnessed the assault.

38. Thereafter, Plaintiff, embarrassed and hurt, went home early.

39. In or around November of 2018, Defendants constructively terminated Plaintiff.

40. On or about November 27, 2018, Defendants' COO BURGER refused to give Plaintiff her final earned commission check. BURGER presented Plaintiff with a "contract termination agreement" and told Plaintiff "I need the signed contract termination before a final check can be released."

41. To date, Defendants owe Plaintiff earned commissions and have refused to pay Plaintiff.

42. At all times material, Plaintiff was an employee for PMF – not an independent contractor.

43. Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of her gender and because she complained and/or opposed the unlawful conduct of Defendants related to the above protected class.

44. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff.

45. The above are just some of the examples of unlawful withholdings of earned commissions.

46. Plaintiff claims unlawful constructive discharge.

47. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

48. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

49.  As a result of the acts and conduct complained of herein, Plaintiff has suffered and will
continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other
compensation, which such employment entails. Plaintiff has also suffered future pecuniary
losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-
pecuniary losses.

50.  As Defendants' conduct has been calculated, malicious, willful, outrageous, and conducted
with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants
jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

51.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
this complaint.

52.  Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate
against any individual with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's race, color, religion, sex, or
national origin."

53.  This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon
the unlawful employment practices of the above named Defendants. Plaintiff complains of
Defendants' violation of Title VII's prohibition against discrimination in employment
based, in whole or in part, upon an employee's gender.

54.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et

        seq., by terminating and otherwise discriminating against Plaintiff as set forth herein

        because of Plaintiff's gender.

### AS A SECOND CAUSE OF ACTION FOR
### DISCRIMINATION UNDER TITLE VII
### <u>(Not Against Individual Defendants)</u>

55.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

        this complaint.

56.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it

        shall be unlawful employment practice for an employer: "(1) to . . . discriminate against

        any of his employees . . . because she has opposed any practice made an unlawful

        employment practice by this subchapter, or because she has made a charge, testified,

        assisted or participated in any manner in an investigation, proceeding, or hearing under this

        subchapter."

57.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq.

        by discriminating against Plaintiff with respect to the terms, conditions or privileges of

        employment because of her opposition to the unlawful employment practices of

        Defendants.

### <u>AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION</u>
### <u>AND RETALIATION UNDER THE EPA</u>

58.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

        this complaint.

59.     Plaintiff claims Defendants violated the EPA, 29 U.S.C. §206(d)(1), which provides as

        follows:

(1) Prohibition of sex discrimination. No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

(2) No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

(3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter.

60. Plaintiff, as a female, was discriminated against by Defendants because of her sex/gender and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under the EPA for her opposition to Defendants' unlawful employment practices.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

61. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

62. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to

discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

63. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's sex, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on Plaintiff's membership in the aforementioned protected classes.

64. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

65. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

66. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

67. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

68. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

69. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

70. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER STATE LAW

71. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

72. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

73. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

74. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

75. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

76. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

77. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

78. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff, and constructively terminated Plaintiff, as set forth herein.

79. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

80. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION**
**<u>FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>**

81. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

82. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

83. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

84. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

85. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION FOR AIDING AND ABETTING
## <u>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>

86. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

87. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

88. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

89. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

90. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## <u>FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>

91. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

92. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

93. Defendants violated the section cited herein as set forth.

94. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN ELEVENTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

95. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

i. The employee or agent exercised managerial or supervisory responsibility; or

ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

96. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TWELFTH CAUSE OF
## ACTION UNDER NY LABOR LAW FOR
## <u>UNPAID COMMISSIONS</u>

97.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98.   N.Y. Lab. Law § 191-c (1)-(3) provides that: "(1) When a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated. (2) The earned commission shall be paid to the sales representative at the usual place of payment unless the sales representative requests that the commission be sent to him or her through the mails. If the commissions are sent to the sales representative by mail, the earned commissions shall be deemed to have been paid as of the date of their postmark for purposes of this section. (3) A principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements."

99.   Defendants violated the section as Defendants purposefully withheld Plaintiff's earned commissions.

100.   Defendants violated the section cited herein as set forth.

**AS A THIRTEENTH**
**CAUSE OF ACTION FOR**
**UNJUST ENRICHMENT**

101.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102.  In order to show a claim of unjust enrichment, a Plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012).

103.  Plaintiff generated profit on behalf of Defendants, thereby making Defendants money, recognition, and boosting Defendants' future earnings. Plaintiff was not compensated for her work.

104.  Defendants violated the claim cited herein as set forth.

**AS A FOURTEENTH**
**CAUSE OF ACTION FOR**
**QUANTUM MERUIT**

105.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

106.  "The elements of a cause of action sounding in quantum meruit are (1) performance of services in good faith, (2) acceptance of services by the person to whom they are rendered, (3) expectation of compensation therefor, and (4) reasonable value of the services rendered." *Evans-Freke v. Showcase Contracting Corp.*, 926 N.Y.S.2d 140, 141 (N.Y. App. Div. 2d Dept. 2011)

107. Plaintiff generated profit on behalf of Defendants and Defendants employees and/or independent contractors, thereby making Defendants and Defendants' agents money, recognition, and boosting Defendants' future earnings. Plaintiff was not compensated for her work.

108. Defendants violated the claim cited herein as set forth.

**AS A FIFTEENTH CAUSE OF ACTION**
**ASSAULT & BATTERY**
**(AS AGAINST DEFENDANT MOORE)**

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

110. Plaintiff repeats and re-alleges each and every allegation made in this complaint as if they were set forth herein fully at length.

111. The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant MOORE did suddenly and without provocation, did physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendant MOORE did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

112. 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of

acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

113. As a result of Defendant MOORE's acts of assault and battery, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A SIXTEENTH CAUSE OF ACTION
## FOR VIOLATING THE GENDER MOTIVATED VIOLENCE PROTECTION ACT
## (AGAINST DEFENDANT MOORE)

114. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

115. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious

risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

116. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

117. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

118. Defendant MOORE's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

119. Defendant MOORE violated the sections cited herein as set forth and Plaintiff suffered numerous damages as a result.

## AS A SEVENTEENTH CAUSE OF ACTION
## BREACH OF CONTRACT
## (AS AGAINST DEFENDANT PMF)

120.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

121.  Under New York law "[t]he elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, (4) resulting damage" *U.S. Nonwovens Corp. v. Pack Line Corp.*, 4 N.Y.S.3d 868, 871–72, 48 Misc.3d 211, 215 (N.Y.Sup.,2015).

122.  A contract existed between Plaintiff and Defendant PMF.

123.  Plaintiff adhered to her contractual duties.

124.  Defendant PMF breached the contract by, among other things, not paying Plaintiff pursuant to the agreed upon terms, not adhering to the contractual obligations in good-faith, unilaterally changing the terms and conditions of the contract.

125.  As a result, Plaintiff suffered significant damages, the exact amount to be proven at trial, together with an award of interest, costs, disbursement, and attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest, multiplied damages for unpaid commissions, and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
        February 26, 2019

                                        **Respectfully Submitted,**

                                        **DEREK SMITH LAW GROUP, PLLC**


                                        **/s/ Alexander G. Cabeceiras**
                                        Alexander G. Cabeceiras, Esq.
                                        One Penn Plaza, Suite 4905
                                        New York, New York 10119