UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –  :
ERICA HERNANDEZ,                                       :
                                                       :
                              Plaintiff,               :
                                                       :          19cv1727
              -against-                                :
                                                       :          OPINION & ORDER
PREMIUM MERCHANT FUNDING ONE,                          :
LLC, *et al.*,                                         :
                                                       :
                              Defendants.              :
                                                       :
                                                       :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –  :

WILLIAM H. PAULEY III, Senior United States District Judge:

          Plaintiff Erica Hernandez brings this employment discrimination action against

Premium Merchant Funding One, LLC ("PMF"), James P. Geiselman III, and Daniel P. Moore

(collectively, "Defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq. ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d)(1), 215(a)(3) ("EPA"), as

well as various state and local laws.  Hernandez alleges that Defendants subjected her to gender-

based discrimination and harassment.  She also contends that Defendants paid her less than her

male colleagues and that she was retaliated against for opposing Defendants' allegedly unlawful

employment practices.  Defendants move to dismiss the federal claims for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion

is granted in part and denied in part.

## BACKGROUND

          Hernandez worked at PMF as an "Independent Sales Representative" ("Sales

Rep") from January to November of 2018.  (Compl., ECF No. 4, ¶¶ 10, 39.)  As a Sales Rep,

Hernandez marketed and promoted PMF's services to prospective clients.  (Compl. ¶ 11.)  PMF

hired Hernandez in January 2018, but she did not sign an employment contract until the end of

March 2018.  (Compl. ¶¶ 10, 12.)  That contract characterized Hernandez as a commission-based

employee entitled to "30% of actual commission payments received by PMF and 25% of any

additional fees or professional service fees . . . actually paid to PMF."  (Compl. ¶¶ 13–14; Decl.

in Supp. of Defs.' Mot. to Dismiss Compl., ECF No. 29 ("Defs.' Mot."), Ex. A ("Employment

Contract"), at 8.)

       In early March 2018, Geiselman helped Hernandez close her first "deal" by

answering a merchant's question on the phone.  (Compl. ¶ 17.)  Later that day, Geiselman called

Hernandez into his office and propositioned her for sex using explicit and vulgar language.

(Compl. ¶ 18.)  Hernandez rebuffed his advances.  (Compl. ¶ 18.)  Three weeks later, Moore—

Hernandez's direct supervisor—told her that she would be required to split the March "deal"

commission with Geiselman.  (Compl. ¶¶ 9, 19.)  Hernandez objected and argued that a

commission split was neither discussed with Moore nor described in her employment agreement.

(Compl. ¶ 19.)  Nevertheless, Moore split Hernandez's commission and designated Geiselman as

an "underwriter" on her files, thereby reducing Hernandez's commissions on future deals.

(Compl. ¶¶ 20–21.)  According to Hernandez, no male coworker was required to split

commissions or have an "underwriter."  (Compl. ¶¶ 21, 29.)

       Hernandez complained repeatedly to PMF executives about her split commissions

and Moore's bullying conduct.  (Compl. ¶¶ 23, 25, 30.)  She asked PMF's CEO to transfer her

from Moore's team.  (Compl. ¶ 26.)  He denied her request.  (Compl. ¶ 27.)  Hernandez also

complained to PMF's COO.  (Compl. ¶ 23.)  Ultimately, PMF's COO decided that any future

commission split would be agreed to among Hernandez, Moore, and Geiselman before a

transaction was consummated.  (Compl. ¶ 32.)  While Hernandez never agreed to any future commission split, PMF continued to withhold earned commissions.  (Compl. ¶ 33.)

Hernandez also claims that PMF maintained a toxic work environment.  (Compl. ¶ 34.)  In May 2018, a PMF manager remarked in front of the entire team on the sales floor that "[Hernandez] needs to be moved or required to wear different attire—she's distracting my team when she bends over!"  (Compl. ¶ 22.)  Moore told the manager to go back to his workstation but took no further action.  (Compl. ¶ 22.)  In October 2018, Moore approached Hernandez from behind, put his arm around her shoulders, and grabbed her breast.  (Compl. ¶ 37.)  In November 2018, Hernandez alleges PMF constructively terminated her and refused to pay her a final earned commission check.  (Compl. ¶¶ 39–41.)

On February 26, 2019, Hernandez filed this action.  Hernandez's claims can be summarized as follows: (1) discrimination and retaliation, under Title VII, the EPA, the New York State Human Rights Law, N.Y. Exec. Law § 290e et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); (2) aiding and abetting under the NYSHRL and NYCHRL; (3) interference with protected rights and employer liability for discriminatory conduct under the NYCHRL; (4) unpaid commissions in violation of New York State Labor Law § 191-c, and related claims for unjust enrichment, quantum meruit, and breach of contract; and (5) assault and battery, as well as a violation of the New York City Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code § 8-901 et seq., against Moore.

DISCUSSION

I.    Legal Standard

On a motion to dismiss, a court accepts all facts alleged in the complaint as true and construes all reasonable inferences in a plaintiff's favor.  ECA, Local 134 IBEW Joint

3

Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009).  Nevertheless, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). To survive a motion to dismiss, the court must find the claim rests on factual allegations that "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quotation marks omitted)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

        "On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (quotation marks omitted). However, the court may not properly consider materials outside the complaint without converting the motion to one for summary judgment.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  "[A] court may convert a motion to dismiss into a motion for summary judgment, and . . . consider . . . external exhibits and affidavits, when it is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive."  Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006) (quotation marks omitted).  As relevant here, Defendants attach eleven exhibits to their motion papers.  Nine of

those exhibits rely on facts outside the four corners of the Complaint and are not incorporated by reference.  Accordingly, this Court will not consider those exhibits.[1]

However, this Court will consider two of the attached exhibits.  First, Hernandez's Equal Employment Opportunity Commission ("EEOC" or the "Commission") documents are public records and integral to her pleading.  See Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (finding plaintiff's allegations in the affidavit submitted to the EEOC as an "integral part of her pleadings"); Taylor v. City of New York, 207 F. Supp. 3d 293, 299 (S.D.N.Y. 2016); Muhammad v. N.Y.C. Transit Auth., 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006).  Second, the employment contract is incorporated by reference in the Complaint.  (See Compl. ¶¶ 12–14.)  Rather than making a "general allusion" to the document at issue—which would be insufficient, Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., 367 F. Supp. 3d 16, 28 (S.D.N.Y. 2019)—the "Complaint . . . make[s] a clear, definite and substantial reference" to the employment contract, Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003).

## II.    Exhaustion of Title VII Administrative Remedies

It is axiomatic that a plaintiff must exhaust her administrative remedies before filing a Title VII claim.  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).  To exhaust, a plaintiff must file a written description of the unlawful employment practice with the EEOC or relevant state or local agency within 300 days of its occurrence.[2]  42

---

[1]    Moreover, Defendants did not move for summary judgment and this Court declines to convert Defendants' motion under Federal Rule of Civil Procedure 12(d).

[2]    "Pursuant to a longstanding Work Sharing Agreement between the EEOC and the New York State Division of Human Rights," claims filed with the EEOC are considered filed with the state agency, "and accordingly a complaint filed within 300 days of the unlawful employment practice with the EEOC is timely."  Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 405 (S.D.N.Y. 2012); 29 CFR § 1601.13.

U.S.C. § 2000e-5(e)(1); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (per

curiam).  After a charge has been filed, the EEOC must provide notice to the employer "within

ten days, and shall make an investigation thereof."  42 U.S.C. § 2000e-5(b).  If the EEOC

determines that there is "reasonable cause to believe that the charge is true," it must "endeavor to

eliminate any such alleged unlawful employment practice by informal methods of conference,

conciliation, and persuasion."  42 U.S.C. § 2000e-5(b).  Alternatively, the EEOC may "bring a

civil action" against the employer in court.  42 U.S.C. § 2000e-5(f)(1).

　　　　　But if "there is n[o] reasonable cause to believe that the charge is true," the EEOC

must dismiss the charge and notify the complainant of her right to sue in court.  42 U.S.C.

§§ 2000e-5(b), f(1); 29 C.F.R. § 1601.28.  Regardless of whether the EEOC acts on a charge, the

EEOC must issue a right-to-sue notice 180 days after the filing of that charge.  See 42 U.S.C.

§ 2000e-5(f)(1); 29 C.F.R. § 1601.28.  A complainant then has 90 days to bring suit against the

employer.  42 U.S.C. § 2000e-5(f)(1).  The EEOC also promulgated a regulation allowing the

agency to issue "early" right-to-sue letters before 180 days have elapsed, provided that: (1) the

respondent is a non-governmental entity, and (2) a designated official from the EEOC "has

determined that it is probable that the Commission will be unable to complete its administrative

processing of the charge within 180 days from the filing of the charge and has attached a written

certificate to that effect."  29 C.F.R. § 1601.28(a)(2).

　　　　　Defendants contend that Hernandez's Title VII claims must be dismissed for

failure to exhaust administrative remedies.  First, relying on Fort Bend County v. Davis, 139 S.

Ct. 1843 (2019), Defendants argue that Hernandez failed to comply with the EEOC's charge-

filing requirement and that "the matter was not properly routed through the EEOC."  (Defs.'

Mot., at 13.)  But Defendants' reliance on Fort Bend is misplaced.  In Fort Bend, the Supreme

Court held that Title VII's charge-filing requirement was not jurisdictional in nature, but rather a "claim-processing" rule. 139 S. Ct. at 1846, 1851. While Defendants correctly note that—like other claim-processing rules—Title VII's charge-filing requirement is "mandatory" and "a court must enforce the rule if a party 'properly raise[s]' it," Fort Bend, 139 S. Ct. at 1849 (quoting Eberhart v. United States, 546 U.S. 12, 19 (2005) (per curiam)), Hernandez complied with that requirement.

Hernandez filed a charge with the EEOC on January 4, 2019 and simultaneously requested an early right-to sue letter pursuant to 29 C.F.R. § 1601.28(a)(2). (Decl. of Alexander G. Cabeceiras in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 30-1 ("Cabeceiras Decl."), Exs. A, B.) On February 13, 2019, the EEOC issued Hernandez an early right-to-sue letter. (Cabeceiras Decl. Ex. C ("Early Right-to-Sue Letter").) The letter stated, in relevant part: (1) "Less than 180 days have passed since the filing of this charge, but [Kevin J. Berry, District Director, has] determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge," and (2) "[t]he EEOC is terminating its processing of this charge." (Early Right-to-Sue Letter.) On February 26, 2019, Hernandez filed this action, well-within the 90-day period after receiving notification. Although Defendants argue that they never received notice of the charge within ten days of Hernandez's filing with the EEOC, see 42 U.S.C. § 2000e-5(b), this deficiency alone does not bar a plaintiff's ability to pursue an action in federal court, see Smith v. Am. President Lines, Ltd., 571 F.2d 102, 107 & n.8 (2d Cir. 1978) (noting, in dicta, that the EEOC's failure to comply with the ten day notice requirement would not alone bar a claimant's suit); Robinson v. Macy's, 2014 WL 6997598, at *8 (S.D.N.Y. Dec. 5, 2014) (collecting circuit court decisions that "either held, or suggested, that the EEOC's failure to comply with its statutory duty of providing notice to Title

VII respondents does not prejudice a plaintiff's ability to maintain a Title VII claim against those respondents in federal court"). Therefore, Hernandez satisfied the statutory requirements for bringing a civil action under Title VII.

Second, Defendants argue that Hernandez's Title VII claims must be remanded to the EEOC because early right-to-sue letters are invalid. While 29 C.F.R. § 1601.28(a)(2) permits the EEOC to issue early right-to-sue letters, Defendants aver that this regulation is an impermissible exercise of the EEOC's authority because it contravenes the EEOC's congressional mandate under § 2000e-5(f)(1). Specifically, Defendants claim early right-to-sue letters vitiate the EEOC's investigation and conciliation requirements, and thus the EEOC lacks authority to issue early right-to-sue letters before the expiration of 180 days after a charge is filed. Hernandez counters that § 2000e-5(f)(1) does not require the EEOC to retain jurisdiction over a charge for 180 days, and therefore 29 C.F.R. § 1601.28(a)(2) is a permissible interpretation of the statute.

There is a circuit split on the validity of early right-to-sue letters. Compare Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1275 (10th Cir. 2001) (upholding the EEOC's regulation and finding that the early issuance of right-to-sue letters does not bar Title VII suits); Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1061–63 (11th Cir. 1994) (same); Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251, 1257 (9th Cir. 1980) (same), with Martini v. Fed. Nat.'l Mortg. Ass'n, 178 F.3d 1336, 1347 (D.C. Cir. 1999) (dismissing an early right-to-sue letter and holding the regulation invalid as contrary to the EEOC's statutory mandate); Moteles v. Univ. of Pa., 730 F.2d 913, 917 (3d Cir. 1984) (noting, in dicta, that "premature resort to the district court [for Title VII claims] should be discouraged as contrary to congressional intent").

The Second Circuit has not addressed this question.  See Hankins v. Lyght, 441 F.3d 96, 101 (2d Cir. 2006) ("We have not decided whether the regulation allowing early issuance of right-to-sue notices, 29 C.F.R. § 1601.28(a)(2), is a permissible construction of Section 2000e-5.  We express no opinion on the issue here, although we note that two circuits and several district courts within this circuit have disagreed with [courts invalidating the regulation]."); Arroyo v. WestLB Admin., Inc., 213 F.3d 625, 2000 WL 562425, at *1 (2d Cir. 2000) (summary order) (finding that the Court "need not, and do not, reach this complicated question" of whether a district court may entertain a Title VII action when the EEOC has issued an early right-to-sue letter).[3]  As a consequence, district judges in this Circuit are split on the validity of early right-to-sue letters.[4]

Where, as here, the action under review involves an agency's interpretation of a statute that the agency is charged with administering, courts apply the two-step framework set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  "First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the

---

[3]    As other judges in this District have noted, the Second Circuit's decision in Weise v. Syracuse University, 522 F.2d 397, 412 (2d Cir. 1975), which upheld the validly of an early right-to-sue letter prior to the enactment of 29 C.F.R. § 1601.28(a)(2), is inapposite.  See, e.g., Gibb v. Tapestry, Inc., 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018) (noting that Weise's holding is not controlling and has been expressly limited to its facts); Hussein v. Pierre Hotel, 2000 WL 776920, at *4 n.4 (S.D.N.Y. June 14, 2000) (discussing the inapplicability of Weise).

[4]    Compare, e.g., McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 325–27 (E.D.N.Y. 2002) (concluding that issuance of early right-to-sue letter did not preclude Title VII suit); Hussein, 2000 WL 776920, at *5 (same); Huang v. Gruner + Jahr USA Publ'g, 2000 WL 640660, at *2 (S.D.N.Y. May 17, 2000) (same); Nodelman v. Gruner & Jahr USA Publ'g, 2000 WL 502858, at *6 (S.D.N.Y. Apr. 26, 2000) (same); Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 381–83 (E.D.N.Y. 2000) (same); Palumbo v. Lufthansa German Airlines, 1999 WL 540446, at *2 (S.D.N.Y. July 26, 1999) (same); Figueira v. Black Entm't Television, 944 F. Supp. 299, 303–08 (S.D.N.Y. 1996) (same), with Gibb, 2018 WL 6329403, at *4 (holding that early right-to-sue letter is invalid); Rodriguez v. Connection Tech., Inc., 65 F. Supp. 2d 107, 110 (E.D.N.Y. 1999) (same); Stetz v. Reeher Enters., Inc., 70 F. Supp. 2d 119, 120–25 (N.D.N.Y. 1999); Henschke v. N.Y. Hosp.-Cornell Med. Ctr., 821 F. Supp. 166, 169–71 (S.D.N.Y. 1993) (same); True v. N.Y. State Dep't of Corr. Servs., 613 F. Supp. 27, 29–30 (W.D.N.Y. 1984) (same).

agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue," the court cannot "simply impose its own construction on the statute." <u>Chevron</u>, 467 U.S. at 843. Rather, the court must defer to the agency interpretation so long as the agency interpretation is "a permissible construction of the statute" ("<u>Chevron</u> Step Two"). <u>Chevron</u>, 467 U.S. at 843.

"To determine whether a statute is ambiguous, we employ 'traditional tools of statutory construction' to ascertain if 'Congress had an intention on the precise question at issue' that 'must be given effect.'" <u>Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency</u>, 846 F.3d 492, 508 (2d Cir. 2017) (quoting <u>Chevron</u>, 467 U.S. at 843 n.9). Accordingly, this Court must determine whether the relevant statutory provisions of Title VII prohibit private lawsuits before the expiration of 180 days from the filing of a charge, and whether the EEOC's regulation permitting early right-to-sue letters is a permissive interpretation of congressional intent. <u>See</u> <u>Chevron</u>, 467 U. S. at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."); <u>see also</u> <u>I.N.S. v. Cardoza-Fonseca</u>, 480 U.S. 421, 446–48 (1987).

Section 2000e-5(f)(1) governs the process by which an "aggrieved" person can bring a civil action after receiving a right-to-sue letter. It provides, in relevant part:

> If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . .

42 U.S.C. § 2000e-5(f)(1).  The two most recent decisions examining early right-to-sue letters both found the language in this statute to be unambiguous, thus ending the inquiry and invalidating the EEOC's regulation.  See Hardy v. Lewis Gale Med. Ctr., LLC, 377 F. Supp. 3d 596, 608 (W.D. Va. 2019) ("Because Congress' intent is clear, the EEOC is not permitted to alter this framework through its rule-making authority."); Gibb, 2018 WL 6329403, at *5 (finding that because "Congress has unequivocally addressed the exclusive conditions under which Title VII complainants may bring a private suit in federal court," "that is the end of the inquiry, and the early right-to-sue letter is invalid").  This Court respectfully disagrees.

The language of § 2000e-5(f)(1) speaks to the EEOC's statutory duty after it has investigated a charge but not reached a conciliation agreement or decided to pursue its own civil action; the EEOC must dismiss the complaint or, after 180 days, must notify the "aggrieved" person of her right to file suit in court.  But nothing in the statute mandates that the EEOC wait 180 days before issuing a right-to-sue letter.  See Figueira, 944 F. Supp. at 304 ("Title VII, on its face, does not prohibit the EEOC from issuing a notice of right to sue before the 180-day period has expired.").  As aptly summarized by Judge Mukasey: "In simple terms, § 2000e-5(f)(1) states that if X occurs, or if Y occurs, then the Commission shall issue a notice of right to sue.  However, the word 'if' together with 'shall' does not bar the conclusion that even when neither of the two conditions occurs, the Commission still may issue a notice of right to sue."  Figueira, 944 F. Supp. at 305 (emphasis in original).  This reading of the statute is shared by the Ninth, Tenth, and Eleventh Circuits.  See Saulsbury, 644 F.2d at 1257; Walker, 240 F.3d at 1274–75; Sims, 22 F.3d at 1061–63.  Thus, this Court concludes that § 2000e-5(f)(1) does not unambiguously mandate a 180-day waiting period.

But "[c]ourts have a duty to construe statutes, not isolated provisions." Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010) (quotation marks omitted); see also Virgilio v. City of New York, 407 F.3d 105, 112 (2d Cir. 2005) ("Further, '[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997))).  Section 2000e-5(b) states that "[w]henever a charge is filed by . . . a person claiming to be aggrieved . . . the Commission . . . shall make an investigation thereof." 42 U.S.C. § 2000e-5(b) (emphasis added).  Relying on this provision, some courts have invalidated the regulation permitting early right-to-sue letters.  See, e.g., Martini, 178 F.3d at 1347–48; Hardy, 377 F. Supp. 3d at 609–11.  For example, the D.C. Circuit has held that § 2000e-5(b) makes the EEOC's duty to investigate "both mandatory and unqualified." Martini, 178 F.3d at 1346.  And because issuing an "early right-to-sue notice typically terminates EEOC investigation of the charge," the D.C. Circuit concluded that 29 C.F.R. § 1601.28(a)(2) contravenes Congress's express statutory directive that the EEOC investigate every charge. Martini, 178 F.3d at 1346–47.

However, the first step under Chevron is determining "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842.  Here, that question is whether Title VII prohibits the EEOC from issuing early right-to-sue letters before the expiration of 180 days from the filing of a charge.  Instead of clarifying this question, § 2000e-5(b) compounds the ambiguity in the statute.  Section 2000e-5(b) requires that the EEOC investigate a claimant's charge "as promptly as possible," and not later than 120 days after the filing of that charge.  It does not mandate that the EEOC investigate for 180 days.  Thus, this ambiguity between the two sections cannot be reconciled simply by looking at the text.

Moreover, the legislative history only provides conflicting narratives.  See Figueira, 944 F. Supp. at 306 (noting the ambiguity in the legislative history).

Because neither the statutory language nor the legislative history demonstrates Congress's unambiguous intent to set a minimum 180-day investigation period, this Court must determine whether the EEOC's interpretation is "based on a permissible construction of the statute."  Chevron, 467 U.S. at 843.  Courts "will not disturb an agency rule at Chevron Step Two unless it is 'arbitrary or capricious in substance, or manifestly contrary to the statute.'" Catskill Mountains, 846 F.3d at 520 (quoting Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 53 (2011)).  Therefore, "at [Chevron's] second step the court must defer to the agency's interpretation if it is 'reasonable.'"  Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2125 (2016) (quoting Chevron, 467 U.S. at 844).

Here, this Court joins other district judges in this Circuit finding that 29 C.F.R. § 1601.28(a)(2), "in authorizing the issuance of early right-to-sue notices, does not conflict with [the language of] Section 2000e-5(f)(1)," Nodelman, 2000 WL 502858, at *6, or its purpose "to ensure that parties are not required to wait indefinitely for administrative action," Huang, 2000 WL 640660, at *2.  While this Court is mindful that the EEOC's duty to investigate is mandatory, the EEOC's regulation does not undermine the investigation process per se.  A designated official at the EEOC—such as a District Director—must still make a determination "that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge . . . ."  29 C.F.R. § 1601.28(a)(2). Hernandez's own letter acknowledged that the EEOC "reviewed all of the circumstances of this case and [has] determined that issuing [her] the requested Notice of Right to Sue is warranted at this time."  (Early Right-to-Sue Letter.)  This Court cannot definitively say that this statement—

albeit likely a form response—is a complete abrogation of the EEOC's duty to investigate. Instead, this can also be interpreted as an indication that the EEOC conducted some form of an investigation but acknowledged the futility of retaining the charge at the EEOC for 180 days.

Therefore, because 29 C.F.R. § 1601.28(a)(2) is "based on a permissible construction of the statute," Chevron, 467 U.S. at 843, this Court defers to the EEOC's interpretation and upholds the regulation.  Accordingly, Defendants' motion to dismiss this action based on an early right-to-sue letter is denied.

III.    Title VII Claims

Claims for employment discrimination are traditionally analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Littlejohn v. City of New York, 795 F.3d 297, 307–08 (2d Cir. 2015).  Under this framework, "a plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (quotation marks omitted).

However, the Supreme Court has held that "the requirements for establishing a prima facie case under McDonnell Douglas [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."  Williams, 458 F.3d at 71 (alteration in original) (quoting Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002)).  Rather, a "plaintiff[] need only satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a) as interpreted by the Supreme Court's holdings in Twombly and Iqbal to survive a motion to dismiss."  Peguero-Miles v. City Univ. of N.Y., 2014 WL 4804464, at *3 (S.D.N.Y. Sept. 25,

2014).  "Nonetheless, the elements of the prima facie case still provide an outline of what is

necessary to render a plaintiff's claims for relief plausible, and so courts consider these elements

in determining whether there is sufficient factual matter in the complaint which, if true, gives

Defendant a fair notice of Plaintiff's claim and the grounds on which it rests."  Peguero-Miles,

2014 WL 4804464, at *3 (alterations and quotation marks omitted).  And notably, "a motion to

dismiss does not involve consideration of whether a plaintiff will ultimately prevail on the

merits, but instead solely whether the claimant is entitled to offer evidence in support of [her]

claims."  Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 65 (2d Cir. 2010)

(quotation marks omitted).

    A.  Employee Status

        As a threshold matter, Defendants attack Hernandez's discrimination and

retaliation claims on the basis that she was never a PMF employee.  To state an employment

discrimination claim against PMF under Title VII, Hernandez must allege the existence of an

employer-employee relationship.  See Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 370 (2d

Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title

VII claims.").  Title VII defines "employee" as "an individual employed by an employer."  42

U.S.C. § 2000e(f); Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 442

(S.D.N.Y. 2018).  To clarify this circular definition, the Second Circuit established a two-part

test to determine employee status.  First, the plaintiff must demonstrate "that she was hired by

the putative employer.  To prove that she was hired, she must establish that she received

remuneration in some form for her work.  This remuneration need not be a salary, but must

consist of substantial benefits not merely incidental to the activity performed."  United States v.

City of New York, 359 F.3d 83, 91–92 (2d Cir. 2004).  Second, a court must determine whether

a hired person is an employee under a thirteen-factor agency rubric articulated by the Supreme

Court in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989).[5]

The threshold issue, i.e., "whether the plaintiff has received some form of

remuneration from the defendant," Hughes, 304 F. Supp. 3d at 443 (quotation marks omitted), is

not disputed because Hernandez was compensated by PMF.  Instead, relying on the Reid factors,

Defendants argue that Hernandez was hired as an independent contractor because PMF: (1)

considered her an independent contractor on her employment contract; (2) paid her using Internal

Revenue Service ("IRS") Form 1099 and did not provide employment benefits; and (3) the fact

that PMF "neither dictated nor controlled the method, by which she achieved her goals" when

brokering deals.  (Defs.' Mot., at 18–19.)  In her Complaint, Hernandez alleges that she was

hired as an independent contractor.  (Compl. ¶ 16.)  However, later, she also alleges that she was

an "employee for PMF—not an independent contractor."  (Compl. ¶ 42.)  Her employment

agreement also characterizes her as an "Independent Sales Contractor."  (Employment Contract,

at 1.)

Looking to the Reid factors, "[t]hough no single factor is dispositive, the 'greatest

emphasis' should be placed on the first factor—that is, on the extent to which the hiring party

controls the 'manner and means' by which the worker completes his or her assigned tasks."

Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir. 2000) (citations

omitted).  Hernandez alleges multiple times that her activities at work were controlled by Moore,

---

[5]    Those factors include: (1) the hiring party's right to control the manner and means by which the product is
accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5)
the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional
projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the
method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the
regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee
benefits; and (13) the tax treatment of the hired party.  Reid, 490 U.S. at 751–52.

her direct supervisor at PMF.  For example, Moore allegedly micromanaged Hernandez's day-to-day schedule, instructed her how to do her job, and altered her compensation structure.  (Compl. ¶¶ 20, 21, 24.)  This is a strong indication that PMF employed her.

While other factors, such as Hernandez's employment contract with PMF and her tax treatment under IRS Form 1099, point toward the opposite conclusion, the Reid test is a fact-intensive inquiry that requires additional information to make legal determinations.  Therefore, this issue is premature and better resolved after discovery.  See, e.g., Fowler v. Scores Holding Co., Inc., 677 F. Supp. 2d 673, 680 (S.D.N.Y. 2009) ("Whether [plaintiff] was, as a matter of law, an employee or an independent contractor, cannot be conclusively determined on the face of the Complaint."); Bernstein v. Seeman, 593 F. Supp. 2d 630, 634 (S.D.N.Y. 2009) (finding plaintiff alleged sufficient facts to show defendant was an "employer" under the common law of agency and noting that the "issue requires the presentation of additional facts to the Court").  Accordingly, Hernandez alleges sufficient facts to make a plausible claim that she was an employee of PMF for purposes of this motion.

     B.  Gender Discrimination

        i.  Disparate Pay

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To state an employment discrimination claim under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  Vega, 801 F.3d at 86.  Thus, at this initial stage, a plaintiff "need only plausibly allege facts that provide 'at least

minimal support for the proposition that the employer was motivated by discriminatory intent.'" Vega, 801 F.3d at 86–87 (quoting Littlejohn, 795 F.3d at 311). "Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, smoking gun, evidence of discrimination. Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." Vega, 801 F.3d at 86 (citations and quotation marks omitted).

First, Defendants argue that Hernandez fails to allege that PMF took any adverse employment action against her. (Defs.' Mot., at 21; Reply Decl. in Supp. of Defs.' Mot. to Dismiss Compl., ECF No. 31 ("Defs.' Reply"), at 16.) Specifically, Defendants claim that Hernandez's commission splits are not attributable to PMF because these compensation decisions were made solely among Hernandez's colleagues and independent of PMF's management. (Defs.' Reply, at 16–17.) An "adverse employment action" is "a materially adverse change in the terms and conditions of employment . . . , one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85 (quotation marks omitted).

Here, Hernandez alleges that Moore, her direct supervisor, controlled her pay structure and required her to split commissions with other employees, including himself and Geiselman. (Compl. ¶¶ 19–20, 31.) Moore also assigned Geiselman as an "underwriter" on Hernandez's deals, further reducing her commissions. (Compl. ¶ 21.) Since Hernandez was a

commission-based employee, any split inevitably decreased her compensation package.  And "[s]ubjecting an employee to unequal pay can, of course, constitute a materially adverse employment action."  Butler v. N.Y. Health & Racquet Club, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011); see also Regan v. Benchmark Co. LLC, 2012 WL 692056, at *10 (S.D.N.Y. Mar. 1, 2012) ("Given the fact that [plaintiff's] compensation . . . was based solely on commission, such actions by . . . management caused a significant change in benefits." (quotation marks omitted)).

Second, Defendants contend that, aside from allegations of sexual misconduct, Hernandez "fails to detail any decisive act by Defendants much less show any nexus between the alleged misconduct and her economic conditions."  (Defs.' Mot., at 21.)  They also note that Hernandez has not adequately pled that these decisions were made on the basis of her gender. (Defs.' Mot., at 22; Defs.' Reply, at 19.)

At the pleading stage, a plaintiff may show an inference of discrimination when she alleges that her employer treated her less favorably than similarly situated individuals outside of her protected group.  See Littlejohn, 795 F.3d at 312 (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)).  Generally, to "establish an inference of discrimination based on a showing of disparate treatment, [a plaintiff] must plead that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'"  Humphries v. City Univ. of N.Y., 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted)); see also McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).  This standard of comparison requires "a reasonably close resemblance of the facts and circumstances of [a] plaintiff's and comparator's cases."  Graham, 230 F.3d at 40.  Recently, the Second Circuit clarified that, compared to a

plaintiff bringing an EPA claim, "a Title VII plaintiff alleging a discriminatory compensation practice need not establish that she performed equal work for unequal pay." Lenzi v. Systemax, Inc., 944 F.3d 97, 110 (2d Cir. 2019). "Rather, all Title VII requires a plaintiff to prove is that her employer 'discriminate[d] against [her] with respect to [her] compensation . . . because of [her] . . . sex.'" Lenzi, 944 F.3d at 110 (alterations in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). And at this stage, Hernandez need only allege a "plausible inference of discrimination" based on sex for the decrease in her wages. Vega, 801 F.3d at 87.

Here, while Hernandez attempts to rely on a theory of disparate treatment, her factual allegations are sparse. Specifically, she claims: (1) "no other similarly situated male [Sales Rep] had their earned commissions slashed," (Compl. ¶ 29), and (2) unlike her male colleagues at the firm, she was assigned an "underwriter," (Compl. ¶ 21). Nothing more. But without additional facts, these two blanket statements about male Sales Reps at PMF are insufficient to satisfy even her "minimal burden." Vega, 801 F.3d at 87 (emphasis in original). Notably, Hernandez fails to identify a single male comparator. While this Court need "not hold that plaintiffs must necessarily identify a male comparator to state a plausible Title VII wage discrimination claim," Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 435 (S.D.N.Y. 2014), the absence of even a single comparator is difficult to square with similar cases in which courts have allowed plaintiffs to proceed with minimal pleadings. See, e.g., Spires v. MetLife Grp., Inc., 2019 WL 4464393, at *11 (S.D.N.Y. Sept. 18, 2019) (finding that African American male plaintiff adequately pled pay discrimination claim by identifying white female comparator and alleging that she was paid more than plaintiff because of her sex and race); Stern v. State Univ. of N.Y., 2018 WL 6106755, at *2 (E.D.N.Y. Nov. 21, 2018) ("[Plaintiff] state[d] with specificity the identity of a male comparator who is paid more than she is, and sets forth that she and the

comparator work in supposedly substantially [similar] positions."). Although Hernandez is not required to allege that she "performed equal work for unequal pay," Lenzi, 944 F.3d at 110, her failure to plead any additional facts to show that she was similarly situated to any of her male colleagues at PMF is insufficient to create an inference of discrimination. See Bilge v. City Univ. of N.Y., 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs'[,] or how they were treated differently by defendants." (alterations and quotation marks omitted)). Accordingly, this component of Hernandez's gender discrimination claim is dismissed.[6]

      ii.   Sexual Harassment

      "Under Title VII, sexual harassment may be cognizable as gender discrimination and has come to be analyzed under two general theories: quid pro quo and hostile work environment." Anderson, 850 F. Supp. 2d at 403. "Although the terms 'quid pro quo' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general.'" Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (quoting Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004)). Here, the Complaint alleges a theory

_____

[6]     This Court provided Hernandez an opportunity to amend her complaint, which she rejected. And at oral argument, Hernandez's counsel stated: "So, your Honor, as for the amendment I didn't have particular names to give unfortunately. She wasn't there too long so she didn't know exactly who was paid what. We tried to articulate facts to support that claim as strongly as we could. I think that is one thing that[,] should your Honor allow us to go forward in discovery[,] we can get to the bottom of fairly quickly with a request for production of documents." (Transcript of December 12, 2019, 2020 Argument, ECF No. 34 ("Arg. Tr."), at 23 (emphasis added).) But the mere filing of a complaint does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79. "A plaintiff who has failed adequately to state a claim is not entitled to discovery." Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F.3d 542, 567 (2d Cir. 2016).

of hostile work environment.  (Compl. ¶ 25; Mem. of Law in Opp'n to Defs.' Decl. in Supp. of

Defs.' Mot. to Dismiss, ECF No. 30 ("Pl.'s Opp'n"), at 16–17.)  But at oral argument,

Hernandez's counsel asserted that she was also bringing a claim of quid pro quo sexual

harassment.  (Arg. Tr., at 23–24.)  Accordingly, this Court addresses both theories.

### 1.  Hostile Work Environment

Title VII protects employees against discrimination resulting from a hostile work

environment.  To prevail on a hostile work environment claim, a plaintiff must show that (1) "the

workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment," and (2) "a specific basis exists for imputing the conduct that

created the hostile environment to the employer."  Howley v. Town of Stratford, 217 F.3d 141,

153–54 (2d Cir. 2000) (quotation marks omitted).  Additionally, "in order to establish a sex-

based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct

occurred because of her sex."  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

"The sufficiency of a hostile work environment claim is subject to both subjective

and objective measurement: the plaintiff must demonstrate that she personally considered the

environment hostile, and that the environment rose to some objective level of hostility."

Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).  Whether an environment is

"hostile" or "abusive" depends on the totality of circumstances.  See Harris v. Forklift Sys., Inc.,

510 U.S. 17, 23 (1993).  Relevant factors as to the hostility of the workplace include: "(1) the

frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and

humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an

employee's work performance."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (quotation

marks omitted).  "[A] plaintiff need not show that her hostile working environment was both severe <u>and</u> pervasive; only that it was sufficiently severe <u>or</u> sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."  <u>Pucino v. Verizon Wireless Commc'ns, Inc.</u>, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original).

　　　　Here, construing all reasonable inferences in her favor, this Court reads the Complaint to allege a hostile work environment claim predicated upon: (1) Geiselman's sexual advances; (2) the PMF manager's remark in front of the team on the sales floor; (3) generalized allegations of sexist behavior; and (4) Moore's ongoing interactions with Hernandez, including the incident in which he touched her breast.  (Compl. ¶¶ 18, 22, 26 34, 37.)

　　　　As an initial matter, there is no question that Hernandez perceived the environment to be hostile.  "The effect on the employee's psychological well-being is . . . relevant to determining whether the plaintiff actually found the environment abusive," but such a showing is not "required."  <u>Harris</u>, 510 U.S. at 23.  For example, after Geiselman's sexual advance, Hernandez left "hurt and disgusted."  (Compl. ¶ 18.)  The PMF manager embarrassed Hernandez by making his remark about her appearance in front of the entire team on the sales floor.  (Compl. ¶ 22.)  And after Moore's alleged sexual harassment in October, which a co-worker watched, Hernandez felt demeaned and went home early.  (Compl. ¶¶ 37–38.)

　　　　The closer question is whether these incidents were sufficiently severe or pervasive enough to amount to an objectively hostile work environment.  Looking to the latter inquiry, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  <u>Tolbert v. Smith</u>, 790 F.3d 427, 439 (2d Cir. 2015) (quotation marks omitted).  Here, while certainly despicable if true, these isolated events are too infrequent to be considered pervasive.  <u>See</u> <u>Faragher v. City of Boca Raton</u>, 524

U.S. 775, 788 (1998) ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (citation omitted)); Alfano, 294 F.3d at 374 ("Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness.").

           And standing alone, Hernandez's allegations against Geiselman and the PMF manager, as well as those about the generally "toxic environment," (Compl. ¶ 34), are not "sufficiently severe to overcome [their] lack of pervasiveness," Mormol, 364 F.3d at 59.  While their conduct was clearly offensive, these allegations as plead do not rise to the level of an actionably hostile work environment.  See Bermudez v. City of New York, 783 F. Supp. 2d 560, 602 (S.D.N.Y. 2011) ("Mere offensive utterances are insufficient to sustain a hostile work environment claim.").  And Title VII "does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature." Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code for the American workplace." (quotation marks omitted)).

           Courts frequently find similar—and even more egregious conduct—insufficient to create a gender-based hostile work environment.  See, e.g., Anderson, 850 F. Supp. 2d at 404 (holding that plaintiff's allegations that supervisor would "come around my cube on occasions and place her vagina literally on my left shoulder or inches from my face" insufficient to state a hostile work environment claim); Prince v. Cablevision Sys. Corp., 2005 WL 1060373, at *7–10 (S.D.N.Y. May 6, 2005) (dismissing hostile work environment claim based on allegations that a senior employee made sexual advances toward plaintiff, solicited her for sex, and tried to kiss her); see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (two alleged

incidents involving an explicit sexual remark and inappropriate, deliberate touching did not

establish hostile work environment), abrogated in part on other grounds by Nat'l R.R. Passenger

Corp. v. Morgan, 536 U.S. 101 (2002).

However, the Second Circuit has also noted that "even a single episode of

harassment can establish a hostile work environment if the incident is sufficiently 'severe.'"

Redd v. N.Y. Div. of Parole, 678 F.3d 166, 176 (2d Cir. 2012); Torres v. Pisano, 116 F.3d 625,

631 n.4 (2d Cir. 1997).  Hernandez alleges that throughout her employment at PMF, Moore

reduced her commissions, took business leads away from her, bullied her, and disparaged her.

(Compl. ¶¶ 19–21, 26, 31.)  Standing alone, these allegations do not raise a reasonable inference

that this conduct was taken on account of Hernandez's gender.  See, e.g., Mendez v. Starwood

Hotels & Resorts Worldwide, Inc., 746 F. Supp. 2d 575, 606 (S.D.N.Y. 2010) ("[E]ven if mean-

spiritedness or bullying render a workplace environment abusive, there is no violation of the law

unless that mean-spiritedness or bullying is rooted in . . . discrimination [based on a protected

characteristic].").  But the October 2018 incident when Moore approached Hernandez from

behind and grabbed her breast while making a sexual comment is reprehensible.  This Court

finds that, when viewed in combination with Moore's other conduct,[7] Hernandez has plausibly

alleged a sufficiently severe incident.  See Redd, 678 F.3d at 180 ("Direct contact with an

intimate body part constitutes one of the most severe forms of sexual harassment.").  This Court

need not decide whether these allegations will ultimately lead to liability at a later stage of

litigation.  See Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 258 (S.D.N.Y. 2014) (noting

---

[7]        While the plausibility of this claim relies almost entirely on Moore's overt sexual act, Hernandez's other
facially sex-neutral allegations may ultimately prove relevant to the totality of the circumstances of her hostile work
environment claim.  See Alfano, 294 F.3d at 378 ("Facially neutral incidents may be included, of course, among the
'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable
fact-finder could conclude that they were, in fact, based on sex.").

that while hostile work environment claim stemming from supervisor's sexual advances "may not ultimately lead to liability, they are not deficient as a matter of law; assessment of such intermediate allegations is best left to a jury"). Moreover, the Second Circuit has "repeatedly cautioned against setting the bar too high" for hostile work environment claims. Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000).

"While such isolated incidents of offensive physical contact constitute[] close questions," Copantitla v. Fiskardo Estriatorio, Inc., 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011), courts in this Circuit routinely find similar allegations of overt sexual contact, such as touching an intimate body part without consent, sufficient to withstand a motion to dismiss. See, e.g., Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 185 (E.D.N.Y. 2012) (finding plaintiff adequately alleged hostile work environment based on single incident in which plaintiff's supervisor grabbed and squeezed her breast); Guzman v. Macy's Retail Holdings, Inc., 2010 WL 1222044, at *4 (S.D.N.Y. Mar. 29, 2010) (denying motion to dismiss hostile work environment claim based on "female plaintiff's allegation that a male co-worker rubbed his genitals against her body, and then repeated that action after the plaintiff asked him to stop").

Additionally, while not addressed by Defendants, this Court has little trouble finding that this conduct occurred because of Hernandez's sex. See Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001) (finding that discrimination because of sex may be demonstrated by "'harass[ment] in such sex-specific and derogatory terms . . . [as] to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace'" (second and third alterations in original) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998))); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) ("Without

question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex.").

Defendants spend little time disputing Hernandez's hostile work environment claim.  Instead, they maintain that PMF cannot be held vicariously liable for the conduct of its employees.  As mentioned, "[b]eyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer."  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 103 (2d Cir. 2010).  "Under Title VII, an employer's liability for [workplace] harassment may depend on the status of the harasser.  If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions."  Vance v. Ball State Univ., 570 U.S. 421, 424 (2013).  But "[w]hen, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer."  Gorzynski, 596 F.3d at 103 (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998), and Faragher, 524 U.S. at 807).

An employee can be considered a "'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim."  Vance, 570 U.S. at 450.  Tangible employment actions may include "a decision causing a significant change in benefits."  Vance, 570 U.S. at 431 (quoting Ellerth, 524 U.S. at 761).  Here, Moore can be considered a "supervisor" since he was empowered to take "tangible employment actions" against Hernandez with respect to her compensation.  (Compl. ¶¶ 19 –20.)  Therefore, imputing Moore's conduct to PMF, this Court finds that Hernandez has plausibly stated a claim for an objectively and subjectively hostile work environment.[8]

---

[8]     In the Second Circuit, an employee is constructively discharged when her employer intentionally creates a work atmosphere so intolerable that she is forced to resign.  Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004); Stetson v. NYNEX Serv. Co., 995 F.2d 355, 361 (2d Cir. 1993).  Although Hernandez's pleadings for

2. Quid Pro Quo

To state a plausible claim of quid pro quo harassment, a "[plaintiff] must show a 'tangible employment action,' i.e., that an 'explicit . . . alteration[] in the terms or conditions of employment' resulted from her refusal to submit to [her employer's] sexual advances." Schiano, 445 F.3d at 604 (second and third alterations in original) (quoting Mormol, 364 F.3d at 57).  A "tangible employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761. And "[i]f the plaintiff can show that she suffered an economic injury from her supervisor's actions, the employer becomes strictly liable without any further showing of why the employer should be responsible for the supervisor's conduct." Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992).

Here, Hernandez alleges that after she rejected Geiselman's sexual advances, he began a practice of splitting her earned commissions.  (Compl. ¶¶ 18–19; Pl.'s Opp'n, at 15.) Specifically, on the same day Hernandez closed her first deal at PMF, Geiselman propositioned her for sex.  (Compl. ¶ 18.)  Three weeks later when commission payments were due, Moore informed her that Geiselman would be taking half of her earned commission.  (Compl. ¶ 19.) This practice continued throughout Hernandez's employment at PMF.  (See Compl. ¶¶ 21, 30, 31.)  But notably, Hernandez does not allege that Geiselman was the supervisor who decided to split her commissions.

---

constructive discharge are minimal, she may proceed with this claim "arising from the conditions of the hostile work environment she alleges." Pryor, 992 F. Supp. 2d at 261.

Throughout the Complaint, Hernandez mentions multiple individuals with supervisory roles: Moore, a defendant and Hernandez's direct supervisor; the PMF manager who made the sexist remark; PMF's CEO; PMF's COO; and PMF's office manager.  (See Compl. ¶¶ 9, 22, 23, 25, 30.)  However, Hernandez never alleges that Geiselman was her supervisor. This omission is critical because quid pro quo claims can only stem from a supervisor's conduct. See Ellerth, 524 U.S. at 753–54 (holding that quid pro quo harassment occurs when "a tangible employment action result[s] from a refusal to submit to a supervisor's sexual demands"); Heskin v. Insite Advert., Inc., 2005 WL 407646, at *17 (S.D.N.Y. Feb. 22, 2005) ("The law of quid pro quo sexual harassment requires that the alleged harasser is the supervisor who affects the conditions of employment." (italics added)); see also Figueroa v. RSquared NY, Inc., 89 F. Supp. 3d 484, 490 (E.D.N.Y. 2015) (collecting cases).

Focusing on Geiselman's exact title in the Complaint does not end the matter.  As mentioned, an employee may be considered a "supervisor" under Title VII if he was empowered by the employer to take "tangible employment actions" against the employee.  Vance, 570 U.S. at 450.  But here, Hernandez consistently alleges that Moore, not Geiselman, altered her commission payments.  (See, e.g., Compl. ¶ 19 ("Defendant MOORE told Plaintiff that Defendant GEISLMAN [sic] would be splitting the commission with her."); ¶ 20 ("Weeks later, Defendant MOORE demanded Plaintiff split her commission on a second finalized deal.").) These allegations parallel those in the EEOC charge.  (See Cabeceiras Decl., Ex. A.)  Because Hernandez does not allege that Geiselman was a "supervisor" empowered to take "tangible employment actions" against her, she cannot rely a quid pro quo theory.

Additionally, "the gravamen of a quid pro quo claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail and that adverse

consequences follow from the employee's refusal." Carrero v. N.Y.C. Hous. Auth., 890 F.2d

569, 579 (2d Cir. 1989).  Here, Hernandez never claims that Geiselman's comments were linked

to him "holding out [PMF's] benefits as an inducement to [Hernandez] for sexual favors."

Carrero, 890 F.2d at 579; Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994) ("The

relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits

to the acceptance or rejection of sexual advances.").  While Geiselman sought sexual favors,

Hernandez does not allege that he conditioned his demands on any PMF benefits, either directly

or indirectly.  And again, Moore—not Geiselman—altered Hernandez's commission structure.

Therefore, Hernandez's claim of quid pro quo sexual harassment based on Geiselman's sexual

proposition is dismissed.

     C.  Retaliation

     Title VII prohibits employers from retaliating against an employee who complains

of employment discrimination.  See 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of

retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2)

that the defendant knew of the protected activity; (3) an adverse  employment action; and (4) a

causal connection between the protected activity and the adverse employment action."  Hicks v.

Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quotation marks omitted).  A plaintiff need not plead

all of the elements of a prima facie case to survive a motion to dismiss, see Swierkiewicz, 534

U.S. at 510–12, but still must plead facts plausibly showing that she suffered an adverse action.

Therefore, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly

allege that: (1) defendants discriminated—or took an adverse employment action—against [her],

(2) 'because' [she] has opposed any unlawful employment practice."  Vega, 801 F.3d at 90

(quoting 42 U.S.C. § 2000e-3(a)).

This Court interprets Hernandez's retaliation claim to be based on her informal complaints to PMF management regarding her compensation.[9]  Indeed, included within Title VII's anti-retaliation protections are "informal protests of discriminatory employment practices, including making complaints to management . . . [and] protesting against discrimination by industry or by society in general . . . ."  Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).  In addition, a plaintiff "need not prove the merit of [the] underlying discrimination complaint to state a retaliation claim, but only that [she] was acting under a good faith, reasonable belief that a violation existed."  Bliss v. MXK Rest. Corp., 220 F. Supp. 3d 419, 425 (S.D.N.Y. 2016) (alterations in original) (quotation marks omitted).

Here, the majority of Hernandez's complaints are based on Moore making "unfair" commission decisions, including not paying her in accord with her contract.  (See Compl. ¶¶ 23, 25–27.)  Most of these allegations fall short of the key requirement that Hernandez make "informal protests of discriminatory employment practices," Sumner, 899 F.2d at 209 (emphasis added), as opposed to blanket statements about her pay generally.  "Generalized complaints about a supervisor's treatment are insufficient" to allege that a plaintiff "engaged in a protected activity."  Risco v. McHugh, 868 F. Supp. 2d 75, 110–11 (S.D.N.Y. 2012); see also Mejia v. White Plains Self Storage Corp., 2020 WL 247995, at *6 (S.D.N.Y. Jan. 16, 2020) (dismissing retaliation claim where plaintiff made informal complaints to supervisor about his

---

[9]      To the extent Hernandez attempts to restyle her quid pro quo claim against Geiselman as a separate claim for retaliation, this claim is dismissed.  Rejecting the sexual advances of an employer may be considered a protected activity for purposes of a retaliation claim.  See Hughes, 304 F. Supp. 3d at 448.  But unlike in this Court's Hughes decision, Hernandez never alleges that Geiselman took any adverse action against her personally or that PMF became aware of these sexual advances.  Additionally, while the span of three weeks between Geiselman's advances and Hernandez's decrease in pay would normally be enough to infer causation through temporal proximity, see Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001), this Court cannot say that these allegations alone suffice to establish causation, see, e.g., Febrianti v. Worldwide, 2016 WL 502027, at *5 (S.D.N.Y. Feb. 8, 2016) ("In the absence of any other evidence of retaliation, however, the Court concludes that temporal proximity is not enough to 'nudge [Plaintiff's] claims across the line from conceivable to plausible.'" (alteration and emphasis in original) (quoting Twombly, 550 U.S. at 570)).

concern of working on Sunday shifts, but never mentioned "how his religion necessitated this particular need").  Indeed, the only allegation that Hernandez's supervisors were aware of any alleged discriminatory conduct is the conversation with PMF's office manager in which Hernandez reported "on-going disparate treatment."  (Compl. ¶ 30.)  But "[t]he onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class and that [she] is not complaining merely of unfair treatment generally."  Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009).

Even reading the Complaint liberally to suggest she engaged in a protected activity by complaining of gender-based discriminatory pay practices at PMF, Hernandez cannot establish the requisite causal connection between these complaints and any adverse employment action.  In the context of a retaliation claim, a decrease in pay is undoubtedly an adverse employment action.  See Burlington N., 548 U.S. at 68.  Additionally, a plaintiff must plead "but-for" causation such "that the adverse action would not have occurred in the absence of the retaliatory motive."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).  "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity."  Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018).  But here, Hernandez alleges that Moore was allegedly cutting her commissions even before she complained to PMF management.  Although she asserts "[e]ventually, Defendants demanded that [she] split her commission" with Moore and Geiselman three ways, (Compl. ¶ 31), the Complaint is devoid of any further allegations to connect these informal complaints to this additional split in commission, including any indication of temporal proximity.  "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does

not arise."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).  Therefore, for this additional reason, Hernandez has failed to establish a causal connection between the protected activity and her decreased pay.  Accordingly, her retaliation claim is dismissed.

IV.   Equal Pay Act

   To prove a violation of the EPA, a plaintiff must make an initial showing that "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions."  E.E.O.C. v. Port Auth. of N.Y. & N.J. ("Port Authority"), 768 F.3d 247, 254–55 (2d Cir. 2014) (quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)).  Notably, a plaintiff "need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility."  Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001) (quotation marks omitted).

   Hernandez's EPA claim fails largely for the same reasons as her pay discrimination claim.  Apart from Hernandez's unsupported claim that no other similarly situated male Sales Rep had their earned commissions split, she provides no factual allegations to support her claim.  For example, she does not allege that her male colleagues performed equal work on jobs requiring equal skill, effort, and responsibility, or that these jobs were performed under similar working conditions.  See, e.g., Eng v. City of New York, 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) ("Plaintiff provides no factual allegations that would allow the Court to compare her job duties, skills and experience with those of the comparators."); Suzuki v. State Univ. of N.Y. Coll. at Old Westbury, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) ("Bald allegations that male employees were paid more than female employees, however, will not

survive a motion to dismiss . . . .").  While the Second Circuit has not addressed whether a

plaintiff must identify a specific comparator, "a plausible EPA claim must include 'sufficient

factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees'

job content was 'substantially equal.'"  Port Authority, 768 F.3d at 256 (emphasis in original)

(quoting Iqbal, 556 U.S. at 678).  In short, since Hernandez fails to make sufficient allegations

that she performed equal work for unequal pay, her EPA claim is dismissed.[10]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and

denied in part.  Specifically, Hernandez's claims for gender discrimination based on pay

disparity and retaliation under Title VII are dismissed.  Hernandez's Title VII sexual harassment

claim based on a quid pro quo theory is dismissed.  The motion to dismiss Hernandez's hostile

work environment claim is denied.  Since Hernandez's NYSHRL claims are subject to the same

standard as Title VII, Patane, 508 F.3d at 113–17, this Court dismisses all NYSHRL claims

except for her discrimination claim based on a theory of hostile work environment and her aiding

and abetting claim.  Her EPA claims are also dismissed in their entirety.  Although the parties

did not brief the remaining state and city claims, this Court exercises supplemental jurisdiction

over them.  See 28 U.S.C. § 1367(a).  The Clerk of Court is directed to terminate the motion

pending at ECF No. 29.

Dated: July 13, 2020
    New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[10]    Hernandez does not offer any argument for her EPA retaliation claim.  While Hernandez made various informal complaints to PMF management about her compensation, "none of these complaints rises to the level of specificity required to state a[n] [EPA] retaliation claim" because there is no indication from the Complaint that Hernandez was "actually complaining of EPA . . . violations such that these complaints constituted 'an assertion of rights protected by the statute' and a 'call for their protection.'"  Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (quoting Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011)).